Steven H. ROEHL and Karoline J. Roehl, Plaintiffs-Appellants,†

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,
Defendant-Respondent,

Travis J. CRAGO and Shawn L. Crago, Defendants,

REGAL WARE, INC., Necessary-Party.

Court of Appeals

*No. 98–1207–FT. Submitted on briefs August 19,
1998.—Decided September 23, 1998.*

(Also reported in 585 N.W.2d 893.)

†Petition to review denied.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Michael J. Ganzer* and *Frank W. Doster* of *Hodan, Doster & Ganzer, S.C.* of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *James T. Murray, Jr.* and *Molly C. Feldbruegge* of *Peterson, Johnson & Murray, S.C.* of Milwaukee.

On behalf of the Wisconsin Academy of Trial Law-
yers an amicus curiae brief was filed by *D.J. Weis* of
*Habush, Habush, Davis & Rottier, S.C.* of Rhinelander.

Before Snyder P.J., Nettesheim and Anderson, JJ.

NETTESHEIM, J.   Section 631.36(5), STATS.,
requires an automobile liability insurer to provide
notice to its insured when a policy is renewed on "less
favorable terms." The trial court ruled that this statute
does not apply where a reduction in coverage is trig-
gered by action of the legislature, not the insurer. The
trial court also ruled that the language of the particu-
lar policies in this case did not obligate the insurer to
provide such notice. As a result, the court ruled at
summary judgment that the "drive other car" exclu-
sions in two policies issued to Steven H. and Karoline J.
Roehl by American Family Mutual Insurance Com-
pany were enforceable even though American Family
had not given the Roehls notice that the legislature had
validated such exclusions following a judicial decision
which had invalidated them. Based on this ruling, the
court dismissed the Roehls' claim for underinsured
motorist (UIM) benefits under two American Family
policies.

We affirm the trial court's grant of summary judg-
ment to American Family.

### FACTS

The facts are undisputed. On March 29, 1996,
Steven was operating his motorcycle when he was
struck by an automobile driven by Travis J. Crago.
Steven suffered severe injuries as a result of the acci-
dent. It is undisputed that the accident resulted from
Crago's negligence.

At the time of the accident, the Roehls held two American Family automobile insurance policies insuring two vehicles which were not involved in the accident.[1] Each policy provided UIM coverage up to a $50,000 limit. Because Steven's damages exceeded the coverage provided by Crago's insurer, the Roehls sought benefits under the UIM coverage in their American Family policies. American Family denied coverage based on the "drive other car" exclusion contained in each policy. On June 7, 1996, the Roehls filed a complaint against American Family seeking recovery under the UIM provisions of the two insurance policies.[2]

American Family moved for summary judgment based on the "drive other car" exclusion in each policy. These provisions excluded coverage for

> bodily injury to a person while occupying, or when struck by, a motor vehicle that is not insured under this policy, if it is owned by you or any resident of your household.

American Family requested dismissal because it was undisputed that the motorcycle which Steven was operating at the time of the accident was owned by him and was not insured by American Family. The Roehls responded that the "drive other car" exclusion was unenforceable because American Family had not provided them notice that the legislature had validated

---

[1] The Roehls' motorcycle was insured by the Insurance Company of Evanston.

[2] Besides suing American Family as their UIM carrier, the Roehls also sued Travis Crago and American Family as Crago's insurer. After this action was commenced, American Family tendered the $25,000 limits on the Crago policy and this aspect of the Roehls' claim against American Family was dismissed.

such exclusions after the supreme court had invalidated them as to uninsured motorist coverage and the court of appeals had invalidated them as to UIM coverage.

The trial court issued a written decision granting summary judgment in favor of American Family. The court held that (1) American Family had not offered or purported to renew the policies on less favorable terms such that notice was required pursuant to § 631.36(5), STATS.; and (2) the plain and unambiguous language of the policies did not require American Family to give the Roehls notice of a change in a policy term "brought about by forces outside the agreements, such as legislation." The court concluded that "regardless of the changes in the terms of the policies in question American Family and Roehl ended up in the position for which they originally bargained."

The Roehls appeal. The Wisconsin Academy of Trial Lawyers (WATL) has filed an amicus curiae brief in support of the Roehls' claim.

## DISCUSSION

■

A motion for summary judgment may be used to address issues of insurance policy coverage. *See Calbow v. Midwest Sec. Ins. Co.*, 217 Wis. 2d 675, 679, 579 N.W.2d 264, 266 (Ct. App. 1998). For summary judgment to be granted, there must be no genuine issue of material fact and the movant must be entitled to judgment as a matter of law. *See id.*; *see also* § 802.08(2), STATS. Our review of a summary judgment is de novo. *See M & I First Nat'l Bank v. Episcopal Homes Management, Inc.*, 195 Wis. 2d 485, 497, 536 N.W.2d 175, 182 (Ct. App. 1995).

This case takes us into the realm of statutory construction and the interpretation of an insurance contract. Statutory construction presents a question of law. *See Gonzalez v. Teskey*, 160 Wis. 2d 1, 7, 465 N.W.2d 525, 528 (Ct. App. 1990). The purpose of statutory construction is to give effect to the legislative intent. *See State ex rel. Angela M.W. v. Kruzicki*, 209 Wis. 2d 112, 121, 561 N.W.2d 729, 734 (1997). When determining legislative intent, we first examine the language of the statute itself. If the language is clear and unambiguous, we define the language of the statute in accordance with its ordinary meaning. *See id.* Where a statute is ambiguous, we must ascertain the legislative intent from the language of the statute in relation to its scope, history, context, subject matter and object intended to be accomplished. *See id.*

■

The interpretation of an insurance contract also presents a question of law for our independent review. *See Tara N. v. Economy Fire & Cas. Ins. Co.*, 197 Wis. 2d 77, 84, 540 N.W.2d 26, 29 (Ct. App. 1995). We interpret an insurance contract to mean what a reasonable person in the position of the insured would have understood the words of the contract to mean. *See id.* at 90–91, 540 N.W.2d at 32.

The American Family insurance policies issued to the Roehls include a "drive other car" exclusion which bars coverage for "bodily injury to a person while occupying, or when struck by, a motor vehicle that is not insured under this policy, if it is owned by you or any resident of your household." The history of this exclusion underlies the issue on appeal.

In 1985, in *Welch v. State Farm Mutual Automobile Insurance Co.*, 122 Wis. 2d 172, 178–82, 361

N.W.2d 680, 683–85 (1985), our supreme court invalidated "drive other car" exclusions for uninsured motorist coverage. The court concluded that the "drive other car" exclusion was a reducing clause which violated the statutory prohibition on reducing clauses. *See id.* at 177–78, 361 N.W.2d at 683. In 1993, in *Rodey v. Stoner*, 180 Wis. 2d 309, 315–16, 509 N.W.2d 316, 318 (Ct. App. 1993), this court extended the *Welch* holding to underinsured motorist coverage. Despite the judicial invalidation of these exclusions, they were included in the American Family policies and in the policy renewals issued by American Family to the Roehls.[3]

On June 30, 1995, in response to the *Welch* and *Rodey* decisions, the legislature enacted § 632.32(5)(j), STATS., which statutorily validated "drive other car" exclusions. Thus, *Welch* and *Rodey* were legislatively overruled. The statute provides:

> (j) A policy may provide that any coverage under the policy does not apply to a loss resulting from the use of a motor vehicle that meets all of the following conditions:
> 1. Is owned by the named insured, or is owned by the named insured's spouse or a relative of the named insured if the spouse or relative resides in the same household as the named insured.

---

[3] The parties do not advise whether the original policies were issued to the Roehls before or after the supreme court and the court of appeals invalidated the "drive other car" exclusion. This is of no consequence since the Roehls make no argument that the original policies were issued in defiance of these judicial pronouncements and this opinion does not address that potential issue. Rather, the Roehls' complaint is that the renewals were issued without notice of the subsequent legislative action resuscitating the "drive other car" exclusion. That is the issue we address.

2. Is not described in the policy under which the claim is made.

3. Is not covered under the terms of the policy as a newly acquired or replacement motor vehicle.

Section 632.32(5)(j).

The parties do not dispute this history of the "drive other car" exclusion or the validation of such exclusions by the enactment of § 632.32(5)(j), STATS. Rather, the issue on appeal is whether American Family was obligated by the terms of § 631.36(5), STATS., by the terms of its policies, or by the combination of both, to notify the Roehls of the limitation in coverage occasioned by the legislature's enactment of § 632.32(5)(j).

Section 631.36(5), STATS., provides in relevant part:

(5) RENEWAL WITH ALTERED TERMS. (a) *General.* Subject to pars. (b) and (d), if the insurer offers or purports to renew the policy but on less favorable terms or at higher premiums, the new terms or premiums take effect on the renewal date if the insurer sent by 1st class mail or delivered to the policyholder notice of the new terms or premiums at least 60 days prior to the renewal date.

Although neither the Roehls nor American Family expressly addresses whether the language of § 631.36(5), STATS., is ambiguous or unambiguous, we begin our discussion by addressing this question.[4] The

_____

[4] WATL contends that the language is ambiguous with regard to the meaning of "less favorable terms." According to WATL, the ambiguity lies in whether the word "terms" refers to the actual words of the policy or the coverage which the policy provides. WATL argues for the latter interpretation. We agree with WATL that the word "terms" refers to the coverage afforded by the policy. However, as our ensuing discussion reveals, we conclude that the statute is ambiguous as to

language of the statute is straightforward. It requires notice to the insured when a renewed policy offers coverage on "less favorable terms." Obviously, a renewal which reduces or limits coverage from the preceding coverage qualifies as "less favorable terms." However, statutory language unambiguous on its face can sometimes be rendered ambiguous by the context in which it is sought to be applied. *See Brandt v. LIRC*, 160 Wis. 2d 353, 368, 466 N.W.2d 673, 679 (Ct. App. 1991) ("[D]epending on the facts of a given case, the same statute may be found ambiguous in one setting and unambiguous in another."). Here, although the four corners of § 631.36(5) may well be unambiguous, it is not clear from the language of the statute whether the legislature intended the statute to apply in a situation where the limitation or reduction in coverage is occasioned by the actions of a third party such as the legislature or the courts. We therefore turn to the legislative history of § 631.36.

Section 631.36, STATS., was created by Laws of 1969, ch. 144, § 24. The preliminary comment to ch. 144 indicates that § 631.36 was aimed at curbing abuses by insurance companies when canceling or non-renewing automobile insurance policies. The comment notes that "whereas at an early date, the [insurance] contract was one between equals, at the present time the parties are not equal. The individual buyer lacks the economic power, bargaining position, and sophistication to deal on an equal basis with the insurer. Because of these changes in conditions, the entire theory underlying cancellation clauses should be reexamined." The objective in creating § 631.36 was to "ensure for *all* policyholders the fair treatment *in*

---

whether it applies to a limitation in coverage occasioned by legislative action.

*contract relationships* that wise insurers give as a matter of course." (Second emphasis added.)

While this legislative history does not speak specifically to the purpose of subsec. (5) of the statute, it is nevertheless clear from the tenor of the entire comment that the section was aimed at past abuses committed by insurers relating to cancellations and nonrenewals of insurance policies. As the comment states, the statute was aimed at ensuring fair treatment "in contract relationships" between insurers and their insureds. Courts and legislatures, although empowered to affect insurance coverage, are not parties to insurance contracts. Here, the expansion in coverage when the courts invalidated "drive other car" exclusions and the later limitation in coverage when those exclusions were resuscitated by the legislature were not occasioned by American Family. Rather, those changes were the result of judicial and legislative decrees. Neither the statute nor its history speaks to notification regarding changes brought about by court or legislative action. In keeping with the purpose of § 631.36, STATS., we construe subsec. (5) to target changes effected by insurances companies.

From this it follows that we must reject the Roehls' argument that American Family imposed the limitation in coverage authorized by § 632.32(5)(j), STATS. Although the Roehls correctly point out that the statute is permissive and does not mandate an insurance company to use a "drive other car" exclusion, the Roehls' argument overlooks that the "drive other car" exclusion was included in the policies at the time of purchase and remained in the renewed policies throughout the contractual relationship between the parties. At no time did American Family alter the language of the policies or effect a change in the policies

which resulted in less favorable terms or an increased premium.[5]

The Roehls also cite to the "elasticity" clause in the American Family policies in support of their argument. This clause provides that the "[t]erms of this policy which are in conflict with the statutes of the state in which the policy is issued are changed to conform to those statutes." Based on this provision, the Roehls contend that the judicial invalidation of the "drive other car" exclusion in *Rodey* served to "delete" that exclusion language from the policy. Therefore, when the legislature resuscitated that exclusion, the Roehls reason that the elasticity clause triggered a renewal of the policy on "less favorable terms." As such, the Roehls contend that American Family was required under § 631.36, STATS., to provide notice.

We are unpersuaded. As noted, the "drive other car" exclusion and the elasticity clause were included in the American Family policies when they were issued and those provisions remained in the renewed policies. While coverage under the policies expanded and contracted pursuant to the elasticity clause as the courts and the legislature issued their conflicting decrees, American Family never altered the language of the policies.[6]

---

[5] We reject the argument by the Roehls and WATL that because the insurance industry lobbied for the changes reflected in ch. 631, STATS., American Family altered the terms of the insurance contract with the Roehls.

[6] Although we conclude that § 631.36(5), STATS., does not require an insurer to notify an insured of limitations in coverage occasioned by legislative action, we reject American Family's further argument that such a requirement would be overly burdensome. As WATL properly observes, the legislature has

We take particular note that the parties' insurance contracts expressly address how changes in the policies are to be achieved. The policies expressly provide that, other than changes occasioned by the elasticity clause, "[n]o change or waiver may be effected in this policy except by endorsement issued by *us*." Here, the parties never changed or waived any provisions in the policies and American Family never issued any endorsement reciting any such change or waiver. Thus, we reject the Roehls' contention that the elasticity clause which implemented the legislature's resuscitation of the "drive other car" exclusion required American Family to provide the notice required by § 631.36(5), STATS.

Based on this same logic, we reject the Roehls' reliance on *Kane v. Employer's Ins.*, 142 Wis. 2d 702, 419 N.W.2d 324 (Ct. App. 1987). There, the insurer unilaterally advanced the termination date of the policy to an earlier date without notifying the mortgagee who was an additional insured. *See id.* at 704, 419 N.W.2d at 326. The court of appeals ruled that this action violated the notice provisions of the policy. *See id.* at 704–06, 419 N.W.2d at 326–27.[7] Here, as we have already held, the change in coverage was occasioned by legislative action, not by any change in the insurance contract at the instance of American Family. *Kane* does not apply here.

The Roehls also argue that, if permitted to stand, the trial court's ruling renders the legislative valida-

required insurers to provide notice to their insureds in other instances. *See, e.g.*, § 632.32(4m), STATS., requiring an insurer to provide notice to an insured of the availability of UIM coverage.

[7] In *Kane v. Employer's Ins.*, 142 Wis. 2d 702, 419 N.W.2d 324 (Ct. App. 1987), the court of appeals considered only the language of the policy. The decision does not allude to § 631.36(5), STATS.

tion of "drive other car" exclusions unconstitutional because it impairs their insurance contracts with American Family. *See* U.S. CONST. art. I, § 10; WIS. CONST. art. I, § 12. The Roehls contend that "[i]f the Wisconsin Legislature's intent was to merely activate somnolent insurance contract language by the enactment [of § 632.32(5)(j), STATS.], then the legislation must be deemed unconstitutional."

The Roehls do not cite to any legal authority in support of this argument. Instead, they simply state the facts and then assert the conclusion. Moreover, even if no legal authority exists, they fail to provide any legal analysis which bridges this gap. This same cursory argument was made in the trial court as to this issue. This may explain why the trial court did not address this argument in its written decision and why American Family does not respond to it in its respondent's brief. On a threshold basis, we decline to review this issue as inadequately briefed. *See State v. Pettit*, 171 Wis. 2d 627, 647, 492 N.W.2d 633, 642 (Ct. App. 1992).

■

Alternatively, we reject the Roehls' constitutional argument on the merits. The parties' insurance contracts included the elasticity clause which conformed the policies to the prevailing statutory law. Thus, the parties anticipated possible legislative adjustment to their agreement. With that understanding in place, it can hardly be said that the legislature's subsequent resuscitation of the "drive other car" exclusion impaired the parties' agreement. Therefore, the legislative enactment of § 632.32(5)(j), STATS., did not unconstitutionally impair the Roehls' insurance contracts with American Family.

Finally, WATL argues that the trial court's ruling violates the public policy represented by the notice requirement set out in § 631.36(5), STATS. WATL's argument, however, is premised upon its contention that the statute applies to an insurer when legislative action triggers the limitation in coverage. We have rejected that interpretation of the statute.[8]

## CONCLUSION

We conclude that American Family was not required either by statute, by the terms of its policy, or by the combination of both to notify the Roehls of changes in their coverage due to legislative action. We further conclude that the legislative enactment of § 632.32(5)(j), STATS., did not unconstitutionally deprive the Roehls of their right to contract. Finally, we conclude that the trial court's ruling does not violate the public policy reflected by § 631.36(5), STATS. We affirm the trial court's grant of summary judgment to American Family.

*By the Court.*—Judgment affirmed.

---

[8] American Family also makes a public policy argument in support of the trial court's ruling. Because we have upheld the trial court's ruling based upon our interpretation of the relevant statutes and the insurance policies, we need not address this further issue. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559, 562 (Ct. App. 1993).