Gary HANSON, Kathy Hanson and Federal Foam Technologies Inc., Plaintiffs-Respondents-Cross-Appellants,†

v.

PRUDENTIAL PROPERTY & CASUALTY INSURANCE COMPANY, Defendant-Appellant-Cross-Respondent.††

Court of Appeals

No. 98–0692. *Oral argument December 1, 1998.—Decided January 12, 1999.*

(Also reported in 591 N.W.2d 619.)

---

†Petition to review denied.
††Petition for cross review denied.

---

On behalf of the defendant-appellant-cross-respondent, the cause was submitted on the briefs of *Marcia V. Harris* and *Shawn M. Raiter* of *King & Hatch, P.A.*, St. Paul, Minnesota. There was oral argument by *Shawn M. Raiter*

On behalf of the plaintiffs-respondents-cross-appellants, there was a brief and oral argument by *Timothy T. Sempf* and *Jason W. Whitley* of *Novitzke, Gust & Sempf*, Amery.

A Non-party brief was filed by *Michael Riley* of *Atterbury, Riley & Luebke, S.C.*, Madison, for Wisconsin Academy of Trial Lawyers.

Before Cane, C.J., Myse, P.J., and Hoover, J.

MYSE, P.J. Prudential Property & Casualty Insurance Company appeals a summary judgment declaring that: (1) Gary Hanson is an underinsured motorist pursuant to a "damages basis" definition of underinsured motorist set forth in a prior coverage period automobile liability policy; and (2) Hanson is entitled to stack his underinsured coverage. Prudential contends the trial court erred by determining that Prudential failed to give proper notice of a less favorable change in Hanson's underinsured motorist coverage pursuant to § 631.36(5), STATS. We conclude that Prudential's notice of right to cancel was insufficient because it failed to adequately advise that as a result of a new, less favorable definition of underinsured motorist, Hanson had a right to cancel the policy. We further conclude that Prudential's notice of right to cancel was insufficient because under § 631.36(5), when an insurer notifies an insured of less favorable terms within sixty days of the renewal date, the notice of right to cancel must advise that the insured is accorded sixty days after the notice is mailed or delivered to renew or cancel. Prudential did not provide such notice. Accordingly, we affirm that portion of the summary judgment declaring Hanson an underinsured motorist pursuant to the "damages basis" definition contained in Prudential's prior coverage policy.

Prudential also contends that the trial court erred by concluding sua sponte that Hanson is entitled to stack underinsured motorist coverages because Prudential failed to notify policyholders of statutory changes validating anti-stacking provisions in insurance policies. Hanson cross-appeals on this issue to ensure that we review all of the arguments presented to the trial court. We conclude that the notice requirements of § 631.36(5), STATS., apply only to changes

initiated by insurance companies and that legislative changes resuscitating invalid contract language do not constitute either an unconstitutional impairment of the right to contract or a retroactive application of legislation. Further, we conclude that because the policy's elasticity clause was a contracted provision, it reflected the parties' anticipation of possible legislative adjustment to their agreement, including validation of the policy's anti-stacking language. Finally, we hold that the anti-stacking language of the policy unambiguously includes the policy's underinsured motorist coverage. Accordingly, we reverse that portion of the summary judgment entitling Hanson to stack underinsured motorist coverages.[1]

Gary Hanson was involved in a motor vehicle accident on September 29, 1995. He was not at fault and settled with the tortfeasor for the tortfeasor's policy limits of $150,000. This amount did not fully compensate Hanson for his injuries, so he demanded underinsured motorist benefits pursuant to his own automobile liability insurance policy with Prudential. Prudential denied Hanson's demand claiming Hanson did not meet the definition of underinsured motorist.

Hanson's automobile liability insurance was renewable every six months. The policy for the period December 16, 1994, to June 16, 1995, contained the following "damages basis" definition of underinsured motorist in an endorsement attached to the original policy:

---

[1] The Wisconsin Association of Trial Lawyers has submitted an amicus brief asserting that Prudential failed to comply with § 631.36(5), STATS., notice requirements and that Hanson should be allowed to stack underinsured motorist coverages.

> The owner or driver responsible for the accident has liability insurance or a liability bond in an amount that is less than *the damage* you are legally entitled to recover. (Emphasis added.)

On May 19, 1995, Prudential mailed Hanson his renewal information and a bill for the next six-month coverage period, June 16, 1995, through December 16, 1995. With this new coverage period, Prudential altered the terms of the policy by changing the definition of underinsured motorist to a "limits basis." Included in the renewal information was an endorsement eliminating the "damages basis" definition contained in the prior endorsement thereby reinstating the "limits basis" definition contained in the original policy. The original policy defined an underinsured motorist as:

> The owner or driver responsible for the accident has liability insurance or a liability bond in an amount that is less than *the limits shown for this coverage on the Declarations*. (Emphasis added.)

It is undisputed that this represented an attempt to renew the policy on less favorable terms. Hanson had three motor vehicles insured with Prudential. The underinsured coverage for each vehicle was $100,000 per person and $300,000 per occurrence.

The renewal package sent to Hanson for the June 16, 1995, to December 16, 1995, coverage period contained the following documents: (1) the main body of the policy containing the "limits basis" definition of underinsured motorist; (2) an updated amendatory state endorsement ("Special State Provision" PAC 226 (Ed. 4/94)) reinstating the policy's "limits basis" definition which by previous amendment had been redefined on a "damages basis"; (3) a "stuffer" entitled "Impor-

tant Policy Changes" (PCD 3115) which Prudential asserts advised Hanson of the change in UIM coverage; and (4) a new declarations page. Hanson timely paid the renewal premium.

Prudential denied Hanson's demand for underinsured motorist coverage based upon the renewal policy's "limits basis" definition. Hanson then sought summary declaratory judgment seeking application of the "damages basis" definition of the earlier policy on the grounds that Prudential failed to provide notice of the less favorable terms and failed to provide notice of Hanson's right to cancel pursuant to § 631.36(5), STATS. Hanson also sought summary declaratory judgment of his right to stack his underinsured motorist coverages. Prudential responded with a cross-motion for summary declaratory judgment of both issues in its favor. The trial court denied Prudential's motion and granted Hanson's motion and Prudential now appeals.

When reviewing a grant of summary judgment, we independently apply the same methodology as the trial court. *Kloes v. Eau Claire Cavalier Baseball Ass'n*, 170 Wis. 2d 77, 83, 487 N.W.2d 77, 79–80 (Ct. App. 1992). That methodology has been set forth numerous times and we need not repeat it here except to emphasize that if a genuine dispute of material fact exists or if the evidence presented is subject to conflicting inferences or factual interpretations, summary judgment must be denied. *See Grams v. Boss*, 97 Wis. 2d 332, 338, 294 N.W.2d 473, 476 (1980); *see also State Bank of La Crosse v. Elsen*, 128 Wis. 2d 508, 512, 383 N.W.2d 916, 918 (Ct. App. 1986).

Here, both parties moved for summary judgment. The facts material to each party's motion are not dis-

puted. The application of the facts to the requirements of the notice and stacking statutes and the interpretation of those statutes are disputed. The construction of a statute or its application to a particular set of facts are questions of law which we decide independently, without deference to the trial court's determination. *Minuteman, Inc. v. Alexander*, 147 Wis. 2d 842, 853, 434 N.W.2d 773, 778 (1989). Questions of law are appropriate for summary judgment. *Jones v. Sears Roebuck & Co.*, 80 Wis. 2d 321, 327, 259 N.W.2d 70, 72 (1977).

## I. NOTICE OF RIGHT TO CANCEL PURSUANT TO § 631.36(5), STATS.

Section 631.36(5) provides:

RENEWAL WITH ALTERED TERMS. (a) *General*. Subject to pars. (b) and (d), if the insurer offers or purports to renew the policy but on less favorable terms or at higher premiums, the new terms or premiums take effect on the renewal date if the insurer sent by 1st class mail or delivered to the policyholder notice of the new terms or premiums at least 60 days prior to the renewal date. If the insurer notifies the policyholder within 60 days prior to the renewal date, the new terms or premiums do not take effect until 60 days after the notice is mailed or delivered, in which case the policyholder may elect to cancel the renewal policy at any time during the 60-day period. The notice shall include a statement of the policyholder's right to cancel. If the policyholder elects to cancel the renewal policy during the 60-day period, return premiums or additional premium charges shall be calculated proportionately on the basis of the old premiums. If the insurer does not notify the policyholder of the new premiums or terms as required by this subsection prior to the

renewal date, the insurer shall continue the policy for an additional period of time equivalent to the expiring term and at the same premiums and terms of the expiring policy, except as permitted under sub. (2) or (3).

Hanson contends that Prudential's renewal package was deficient notice under the statute in two respects: (1) it did not contain the required notice of Hanson's right to cancel; and (2) it did not notify Hanson of the specific change in the definition of underinsured motorist. Because we conclude that Prudential's notice of right to cancel was deficient, it is unnecessary to address whether Hanson was properly notified of the change in definition.

Prudential's notice of right to cancel was deficient on two grounds. First, it failed to adequately inform Hanson of his right to cancel as a result of Prudential's renewing the policy with new, less favorable terms. Instead, the policy and notice enclosures contained in the renewal package required Hanson to sift through a combination of policy endorsements, policy provisions and informational enclosures and then independently ascertain that he had a right to cancel the policy based on Prudential's renewal on less favorable terms.

Section 631.36, STATS., is designed to advise an insured of altered terms contained within policy renewals. When an insurer notifies an insured of new, less favorable policy terms within sixty days of a renewal date, the statute also requires the insurer to provide the insured with a statement of the insured's right to cancel. Section 631.36(5), STATS. Thus, the statute accords an insured a right to cancel the policy precisely because of those less favorable policy terms.

In this instance, Prudential sent Hanson a renewal package containing the main policy and sev-

364

eral enclosures within sixty days of his renewal date. Prudential contends that the entire package considered together meets the notice of right to cancel requirement. Under Prudential's scheme, an insured would have to read through selected portions of the policy without guidance and independently discern the connection between the insurer's notification of the less favorable terms incorporated in the renewal policy and the insured's corresponding right to cancel the policy as a result of those changes. We reject the suggestion that the notice of right to cancel requirements of § 631.36(5), STATS., can be met by requiring an insured to independently interface numerous documents and provisions which are not correlated, cross-referenced or inter-connected.

The renewal package contained an amendatory state endorsement, PAC 226 (Ed. 4/94), with the following provision:

### Renewal With Different Terms

If we renew this policy but on less favorable terms, or with a premium increase of 25% or more not due to an increase in the risk, we will send you 60 days written notice. Your failure to pay the renewal premium by the date due indicates your rejection of our renewal offer.

This notice of right to cancel is not referenced or connected in any manner to the "stuffer" Prudential asserts contained the notice of the change in definition of underinsured motorist. The "stuffer" does not contain a statement of Hanson's corresponding right to cancel pursuant to these specific changes. It simply urges the insured to read the notice and enclosed state endorsement and suggests that if the insured has questions to call Prudential. The policy itself contains

cancellation provisions but they do not reference the specific changes the insurer seeks to implement. The invitations contained in various provisions suggesting the insured call the company concerning questions about policy changes do not constitute notice of right to cancel. It is unreasonable to expect an insured to undertake the journey through the various documents Prudential supplied and reach the conclusion that there was a right to cancel the policy because of the less favorable terms Prudential sought to implement.

While we do not require that all the necessary information be on a single page, the information presented must permit a reasonable person to understand that his policy is being changed to include new, less favorable terms than previously existed, and that he has sixty days within which to accept the policy as changed or to cancel.

Additionally, Prudential's notice of right to cancel is insufficient because § 631.36(5), STATS., requires that when an insured is notified of less favorable terms within sixty days of the renewal date, the notice of right to cancel must advise that the insured has sixty days from the date notice was mailed or delivered to elect to renew or cancel the policy. Prudential did not provide such notice.

■

The meaning of a statute presents a question of law we review de novo. *Jungbluth v. Hometown, Inc.,* 201 Wis. 2d 320, 327, 548 N.W.2d 519, 522 (1996). We first examine the plain language of the statute and if the meaning is plain, we need not look further than the language itself to determine the statute's meaning. *Id.*

Recently, we decided that the language of § 631.36(5), STATS., is straightforward. *Roehl v. American Family Mut. Insur. Co.,* 222 Wis. 2d 136, 144–45,

585 N.W.2d 893, 896 (Ct. App. 1998). The plain language of the statute accords an insured a sixty-day period within which to cancel a policy renewed on less favorable terms. Unless an insured is expressly advised of this information, particularly when the notice of less favorable terms is sent or delivered within sixty days of the renewal date, an insured might operate under the mistaken belief that the election to renew or cancel must be made on the renewal date. A statute that accords an insured a sixty-day right to cancel cannot be construed so as not to require notice of that right.

In this case, the policy renewal date was June 16, 1995. Prudential sent the renewal package May 19, 1995. Accordingly, the new terms were not effective until July 19, 1995, and Hanson had a corresponding right to cancel the policy until July 19, 1995, as opposed to the June 16, 1995, renewal date. Prudential's notice of right to cancel, however, states that failure to pay the renewal premium by *the date due* indicates rejection of the renewal offer. Because Prudential notified Hanson within sixty days of the renewal date, this notice of right to cancel is misleading because it indicates that failure to pay the renewal premium by the *due date* indicates rejection of the renewal offer. Yet, the requirements of § 631.36(5), STATS., accord Hanson the right to sixty days after the renewal was sent or delivered to cancel, and that sixty-day period extends beyond the June 16, 1995, renewal date.

■

Consequently, we hold that the plain language of § 631.36(5), STATS., requires that when an insurer offers to renew a policy on new, less favorable terms within sixty days of the renewal date, the insurer must

inform the insured that the new terms do not become effective until sixty days after the renewal is sent or delivered and that the insured has a corresponding sixty days within which to elect to renew or cancel the policy. Because Prudential's right to cancel notice did not provide this information, it is insufficient under the statute.

■

When an insurer does not comply with the notification requirements of the statute, the insurer is required to continue the policy for an additional period of time equivalent to the expiring policy. Section 631.36(5)(a), STATS. The policy previously in effect, therefore, applies for an additional six-month period and was effective on the date this claim arose. Accordingly, we affirm that portion of the trial court's summary judgment declaring Hanson an underinsured motorist pursuant to the "damages basis" definition contained in the prior coverage period policy.

## II. EFFECT OF POLICY'S ANTI-STACKING PROVISION

Prudential and Hanson both contend that the trial court erred by concluding sua sponte that Hanson is entitled to stack his underinsured motorist coverages because Prudential failed to notify Hanson of statutory changes validating the anti-stacking provision in Hanson's policy. We recently held that the notice requirements of § 631.36(5), STATS., target only changes initiated by insurance companies. *Roehl*, 222 Wis. 2d at 146, 585 N.W.2d at 897. Consequently, the trial court erred by holding that Prudential must notify Hanson of statutory changes and that because it did not, Hanson is entitled to stack his underinsured motorist coverages.

Hanson asserts other bases on which he contends he should be allowed to stack but we conclude that none of those arguments are persuasive. Hanson asserts that the application of the 1995 amendments to § 632.32, STATS., resuscitating anti-stacking provisions, operates as an unconstitutional impairment on his right to contract and constitutes an unconstitutional retroactive application of legislation.[2] Our decision in *Roehl* controls both arguments.

*Roehl* held that the 1995 amendment resuscitating "drive the other car" exclusions was not an unconstitutional impairment of the right to contract because the policy contained an "elasticity clause" conforming the policy to prevailing state laws, indicating that the parties anticipated possible legislative adjustment to their agreement. While *Roehl* considered the "drive the other car" provisions resuscitated by the 1995 amendment, we consider the anti-stacking provisions resuscitated by the same 1995 amendment. Like *Roehl*, which relied on the policy's elasticity clause to conform the policy to prevailing state law, Hanson's policy also contained an elasticity clause conforming the policy to Wisconsin law. The parties agreed to the elasticity clause in Hanson's policy when they entered into the contract, and under its provision the anti-stacking clause became effective as of the date of the new law.

As in *Roehl*, Hanson contracted for anticipated changes during the life of the contract, so his argument that the legislation impaired his right to contract fails. For this same reason, Hanson's contention that the impact of the 1995 amendment validating anti-stacking clauses should not become effective until the end of the contract period fails because of the operation of the

---

[2] 1995 WIS. ACT 21 § 5.

elasticity clause. The effect of *Roehl* is to enforce the legislature's ability to exercise statutory changes as of the effective date of a legislative act.

Hanson contends that Prudential's anti-stacking policy language fails to conform to language set forth in § 632.32(5)(f), STATS., and is therefore void.[3] This statute contains no indication that magic language is required or that a policy must parrot the statute. Hanson also contends the policy's anti-stacking language does not apply to underinsured motorist coverage because it refers only to vehicles and does not mention underinsured motorist coverage. WATL's amicus brief additionally asserts that the underinsured motorist section of the policy contains its own provision governing limits of liability that does not contain language precluding Hanson from stacking. The policy contains the following anti-stacking provision:

**LIMIT OF COVERAGE**

If **you** or any other person insured under this policy is in an accident:

In a **car** that is insured by this policy—**We** will not pay more than the limit of coverages for that particular **car**.

1. In a **car** that is not insured by this policy or while a pedestrian—**We** will not pay more than the

---

[3] Section 632.32(5)(f), STATS., provides:

A policy may provide that regardless of the number of policies involved, vehicles involved, persons covered, claims made, vehicles or premiums shown on the policy or premiums paid the limits for any coverage under the policy may not be added to the limits for similar coverage applying to other motor vehicles to determine the limit of insurance coverage available for bodily injury or death suffered by a person in any one accident.

limit of coverages which **you** have on any one of **your cars**.

> This limit of coverage applies regardless of the number of policies, insureds, insured **cars**, claims made, or **cars** involved in the accident or loss. *Coverages on other cars insured by us cannot be added to or stacked on the coverage of the particular car involved.* (Emphasis added.)

The policy's plain language discusses coverages in the plural stating, "Coverages on other cars insured by us cannot be added to or stacked on the coverage of the particular car involved." This language is a generic reference that applies to any coverage Hanson purchased for his cars. Because he had underinsured motorist coverage on his cars, we conclude that the policy's anti-stacking language does apply to the underinsured motorist coverage.

■

The trial court's conclusion that Prudential was required to notify Hanson of legislative changes validating the anti-stacking provision in his policy was in error. Hanson's additional arguments that stacking should be allowed fail for the reasons stated above. Accordingly, we reverse that portion of the trial court's summary judgment entitling Hanson to stack his underinsured motorist coverages.

*By the Court.*—Judgments affirmed in part; reversed in part. Costs denied to both the appellant and the respondents.