Edward A. HINRICHS and Michelle Hinrichs, Plaintiffs-Appellants,†

TRANSPORTATION INSURANCE COMPANY, Plaintiff,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a domestic corporation, Defendant-Respondent,

Brian J. MAYR, Defendant.

Court of Appeals

*No. 00–1659. Submitted on briefs October 18, 2000.—Decided April 19, 2001.*

## 2001 WI App 114

(Also reported in 629 N.W.2d 44.)

†Petition to review denied.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *James W. McCann* of *Koch & McCann, S.C.* of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Michael J. Wirth* of *Peterson, Johnson & Murray, S.C.* of Milwaukee.

Before Dykman, P.J., Vergeront and Roggensack, JJ.

¶ 1.  DYKMAN, P.J.  Edward and Michelle Hinrichs appeal from an order dismissing their underinsured motorist insurance claims against American Family Mutual Insurance Company after American Family moved for summary judgment. The Hinrichs argue that the definition of underinsured motorist from Michelle's previous policy applies because American Family never provided Michelle with a WIS. STAT. § 631.36(5) (1997–98)[1] or other notice of a change in

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted. WISCONSIN STAT. § 631.36(5) reads in part:

> RENEWAL WITH ALTERED TERMS. (a) *General*. Subject to pars. (b) and (d), if the insurer offers or purports to renew the policy but on less favorable terms or at higher premiums, the new terms or premiums take effect on the renewal date if the insurer sent by 1st class mail or delivered to the policyholder notice of the new terms or premiums at least 60 days prior to the renewal date. If the insurer notifies the policyholder within 60 days prior to the

coverage. We conclude that § 631.36(5) is not controlling, given the date of the loss, and that the Hinrichs failed to produce evidence that placed the fact of notice in dispute. The Hinrichs also argue that the newer definition of an underinsured motorist used in both Michelle's and Edward's policies is ambiguous when read with another provision in the policies, and that this definition renders their coverage "illusory." We reject these assertions, concluding that the underinsured motorist provisions of the policies are not ambiguous and that, under *Dowhower v. West Bend Mut. Ins. Co.*, 2000 WI 73, 236 Wis. 2d 113, 613 N.W.2d 557, the definition of an underinsured motorist does not make the Hinrichs' underinsured motorist coverage "illusory."

## I. Background

¶ 2.  The pleadings and affidavits set forth the following facts. On October 2, 1997, Edward Hinrichs was working in a highway construction area when Brian Mayr struck Edward with his vehicle. As a result, Edward sustained back and other injuries. Mayr was insured by American Family, as were Edward and his wife, Michelle. Mayr's policy provided

renewal date, the new terms or premiums do not take effect until 60 days after the notice is mailed or delivered, in which case the policyholder may elect to cancel the renewal policy at any time during the 60-day period. The notice shall include a statement of the policyholder's right to cancel. If the policyholder elects to cancel the renewal policy during the 60-day period, return premiums or additional premium charges shall be calculated proportionately on the basis of the old premiums. If the insurer does not notify the policyholder of the new premiums or terms as required by this subsection prior to the renewal date, the insurer shall continue the policy for an additional period of time equivalent to the expiring term and at the same premiums and terms of the expiring policy, except as permitted under sub. (2) or (3).

for $100,000 of liability coverage, and the parties agree that American Family paid this amount to the Hinrichs.[2]

¶ 3.   Edward and Michelle each had a policy, and both policies provided a limit of $100,000 underinsured motorist coverage. The definition of an underinsured motorist contained in the policies on the date of the accident defined "underinsured motor vehicle" as "a motor vehicle which is insured by a liability bond or policy at the time of the accident which provides bodily injury liability limits less than the limits of liability of this Underinsured Motorists coverage." Up until April 15, 1992, Michelle's policy defined "underinsured motor vehicle" as "a motor vehicle which is insured by a liability bond or policy at the time of the accident which provides bodily injury liability limits less than the damages an insured person is legally entitled to recover."

¶ 4.   The Hinrichs sued American Family, claiming they were entitled to additional amounts under the underinsured motorist provisions of their policies. American Family moved for summary judgment, arguing that Mayr was not an underinsured motorist as defined in the policies. The trial court granted American Family's motion, and the Hinrichs appeal.

## II.   Analysis

¶ 5.   We review a grant or denial of summary judgment de novo, using the same methodology as the circuit court. *See M&I First Nat'l Bank v. Episcopal*

---

[2] A partial release form shows that Edward received $100,000, but for the sake of accuracy, we note that at least one document in the record suggests that a portion of this amount was paid directly to a worker's compensation insurer.

*Homes Mgmt., Inc.*, 195 Wis. 2d 485, 496–97, 536 N.W.2d 175 (Ct. App. 1995). We need not repeat the entire methodology here, except to note that if a genuine dispute of material fact exists or if the evidence presented is subject to conflicting inferences or factual interpretations, then summary judgment must be denied. *See Hanson v. Prudential Prop. & Cas. Ins. Co.*, 224 Wis. 2d 356, 362, 591 N.W.2d 619 (Ct. App. 1999).

## A. Applicable Definition of Underinsured Motorist

¶ 6. The Hinrichs first argue that the definition from Michelle's pre-April 1992 policy applied at the time of Edward's accident because American Family failed to comply with the notice requirements of WIS. STAT. § 631.36(5). Section 631.36(5) requires, among other things, that when an insurer "offers or purports to renew the policy but on less favorable terms," the insurer must notify the policyholder of the new terms sixty days prior to the renewal date. If the insurer fails to comply with the notice requirements in § 631.36(5), then as a general rule it must "continue the policy for an additional period of time equivalent to the expiring term and at the same premiums and terms of the expiring policy . . . ."[3]

¶ 7. In its oral decision, the trial court determined that any notice that American Family claimed it provided did not, as a matter of law, comply with WIS. STAT. § 631.36(5). The Hinrichs thus argue on appeal that, because American Family did not provide notice complying with § 631.36(5), the definition of underin-

---

[3] WISCONSIN STAT. § 631.36(5) does not apply when the change in a renewed policy is a result of legislative action rather than a change initiated by the insurance company. *Hanson v. Prudential Prop. & Cas. Ins. Co.*, 224 Wis. 2d 356, 359–60, 591 N.W.2d 619 (Ct. App. 1999).

sured motorist in effect at the time of the accident in October 1997 was the definition from Michelle's pre-April 1992 policy. We disagree and conclude that § 631.36(5) cannot extend coverage as the Hinrichs contend.[4]

■

¶ 8.   The interpretation of a statute is a question of law for our de novo review. *See Roehl v. American Family Mut. Ins. Co.*, 222 Wis. 2d 136, 142, 585 N.W.2d 893 (Ct. App. 1998). The purpose of statutory construction is to give effect to the legislative intent. *Id.* When determining legislative intent, we first examine the language of the statute itself, and if the language is unambiguous, we give the language of the statute its ordinary meaning. *Id.*

■

¶ 9.   WISCONSIN STAT. § 631.36(5) (emphasis added) requires insurers to "continue the policy for *an* additional period of time equivalent to the expiring term." By its plain language, § 631.36(5) tells us that it was not intended to allow expiring policies to continue indefinitely. Instead, the purpose of § 631.36(5) is to permit an insured sufficient time to obtain different insurance if she or he so desires when the terms of an expiring policy are about to change unfavorably.

¶ 10.   The Hinrichs point to *Hanson*, 224 Wis. 2d at 368, in which we applied WIS. STAT. § 631.36(5) and concluded that the definition of an underinsured motorist from an expiring policy controlled after the insurer failed to give the insured notice in compliance

---

[4] Because we conclude that WIS. STAT. § 631.36(5) cannot extend coverage as the Hinrichs contend, we need not decide whether, under summary judgment methodology, the trial court properly determined that American Family failed to provide notice in compliance with § 631.36(5).

with the statute. However, in *Hanson*, the expiring policy was in effect from December 16, 1994, to June 16, 1995, and the insured's accident occurred on September 29, 1995. *Id.* at 360–61. Applying § 631.36(5) to the facts in *Hanson*, we explained:

> When an insurer does not comply with the notification requirements of the statute, the insurer is required to continue the policy for an additional period of time equivalent to the expiring policy. Section 631.36(5)(a), STATS. The policy previously in effect, therefore, applies for an additional six-month period and was effective on the date this claim arose.

*Id.* at 368.

■

¶ 11.    Thus, in *Hanson* we were not faced with an accident like Edward's, which occurred more than five years after the expiration of the policy Edward and Michelle seek to enforce. Even assuming that American Family failed to comply with WIS. STAT. § 631.36(5), we conclude that the operation of the statute did not extend the terms of Michelle's expiring policy beyond one additional six-month period. Therefore, the Hinrichs cannot rely on § 631.36(5) to apply terms of Michelle's policy that expired in April 1992 to a loss that occurred in October 1997.

¶ 12.    The Hinrichs also argue that, even aside from WIS. STAT. § 631.36(5) notice, there is nothing in the record to show that Michelle ever received a policy that contained the newer definition. Therefore, the Hinrichs contend, the trial court improperly granted summary judgment in favor of American Family because there is nothing on which the court could base a conclusion that Michelle knew of the policy change. We disagree with this analysis.

¶ 13. To establish a genuine issue of material fact, the party opposing summary judgment "may not rest upon the mere allegations or denials of the pleadings, but must file affidavits or other supporting papers based upon personal knowledge of specific evidentiary facts that are admissible." *Helland v. Kurtis A. Froedtert Mem. Lutheran Hosp.*, 229 Wis. 2d 751, 764, 601 N.W.2d 318 (Ct. App. 1999). Michelle's affidavit is a part of the record, and in that affidavit, she fails to say that she did not receive policies or endorsements reflecting the new definition, nor does anything in her affidavit imply that she did not receive them. The strongest statement Michelle makes with regard to this issue is as follows:

> At no time from April 15, 1992 up to the date of the accident of October 2, 1997 was I advised by American Family Mutual Insurance Company or anyone on their behalf that the definition of an underinsured motor vehicle had been changed . . . ."

This statement does not place in dispute the fact of Michelle's receipt sometime after April 1992 of a copy of her policy or an endorsement showing the change in underinsured motorist coverage. Therefore, the trial court did not err in granting summary judgment.

### B. Validity of Underinsured Motorist Provisions

■

¶ 14. The Hinrichs next argue that the definition of underinsured motorist in both their policies is ambiguous when read with another underinsured motorist provision in the policies. The Hinrichs also argue that the policies create "illusory" coverage because the $100,000 limit of underinsured motorist

coverage shown on the declarations pages is never obtainable. Whether an insurance policy is ambiguous and whether an insurance policy is "illusory" are both questions of law. *Wisconsin Label Corp. v. Northbrook Prop. & Cas. Ins. Co.*, 2000 WI 26, ¶ 24, 233 Wis. 2d 314, 607 N.W.2d 276 (ambiguous); *Hoglund v. Secura Ins.*, 176 Wis. 2d 265, 268, 500 N.W.2d 354 (Ct. App. 1993) (illusory). We may therefore resolve these questions within the context of our summary judgment review. *See Miller v. Thomack*, 210 Wis. 2d 650, 658, 563 N.W.2d 891 (1997).

¶ 15.    The terms of an insurance policy are ambiguous only when they are fairly susceptible to more than one reasonable construction. *See Maas v. Ziegler*, 172 Wis. 2d 70, 79, 492 N.W.2d 621 (1992). Complex or cumbersome policy language does not necessarily render an insurance policy ambiguous. *See Sukala v. Heritage Mut. Ins. Co.*, 2000 WI App 266, ¶ 10, 240 Wis. 2d 65, 622 N.W.2d 457.

¶ 16.    As American Family points out, the definition of underinsured motorist in the Hinrichs' policies is nearly identical to the definition that the supreme court concluded was unambiguous in *Smith v. Atlantic Mut. Ins. Co.*, 155 Wis. 2d 808, 811, 456 N.W.2d 597 (1990). Nevertheless, the Hinrichs contend that the definition in their policies is ambiguous when read with another provision in their policies, which states:

> We [American Family] will pay compensatory damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an underinsured motor vehicle. The bodily injury must be sustained by an insured person and

must be caused by accident and arise out of the use of the underinsured motor vehicle.

We disagree that the two provisions combine to make the policy ambiguous. The latter provision clearly refers to and depends on the policies' definition of "underinsured motor vehicle," which appears on the same page. Moreover, words and phrases that are specifically defined by American Family appear in boldface type throughout the policy. The only reasonable construction of the provision necessarily includes the definition of "underinsured motor vehicle" provided in the policies.

¶ 17.  We also disagree with the Hinrichs' assertion that their underinsured motorist coverage is "illusory." In *Sukala*, 2000 WI App 266 at ¶ 20, we determined that reducing clauses like those in WIS. STAT. § 632.32(5)(i)[5] do not render underinsured motorist coverage illusory. We rested our decision on two grounds: (1) the legislature's determination that clauses like those in § 632.32(5)(i) are permissible, and (2) the supreme court's statement in *Dowhower* that:

> an insurer may reduce payments made pursuant to a UIM [underinsured motorist] policy by amounts received from other legally responsible persons or

---

[5] WISCONSIN STAT. § 632.32(5)(i) reads:

A policy may provide that the limits under the policy for uninsured or underinsured motorist coverage for bodily injury or death resulting from any one accident shall be reduced by any of the following that apply:

1.  Amounts paid by or on behalf of any person or organization that may be legally responsible for the bodily injury or death for which the payment is made.

2.  Amounts paid or payable under any worker's compensation law.

3.  Amounts paid or payable under any disability benefits laws.

organizations, provided that the policy clearly sets forth that the insured is purchasing a fixed level of UIM recovery that will be arrived at by combining payments made from all sources.

*Sukala*, 2000 WI App 266 at ¶ 16, ¶ 18 (quoting *Dowhower*, 2000 WI 73 at ¶ 33).

¶ 18.    The Hinrichs cite to *Kuhn v. Allstate Ins. Co.*, 181 Wis. 2d 453, 463–65, 510 N.W.2d 826 (Ct. App 1993), *aff'd on other grounds*, 193 Wis. 2d 50, 532 N.W.2d 124 (1995), in which we held that underinsured motorist coverage was illusory where the plaintiffs would receive some but never all of their $50,000 limit in coverage because of the operation of a reducing clause.[6] Unlike in *Dowhower* and *Sukala*, the policy provision at issue in *Kuhn* was not a reducing clause like those in WIS. STAT. § 632.32(5)(i).[7]

¶ 19.    We question whether there is any logic in distinguishing between *reducing clauses* that reduce underinsured motorist coverage and *definitions* that reduce underinsured motorist coverage as here, but that distinction remains in the case law. At any rate, to the extent that our decision in *Kuhn* and the supreme court's opinion in *Dowhower* conflict when applied here, we must resolve that conflict in favor of the supreme court's decision. *See Sukala*, 2000 WI App 266 at ¶ 20.

¶ 20.    What the Hinrichs mean when they argue that the $100,000 limit in Michelle's or Edward's policy is "never obtainable" is that it is never obtainable

---

[6] Although the supreme court affirmed *Kuhn* on other grounds, we treat our decision in *Kuhn* as binding. *Sweeney v. General Cas. Co.*, 220 Wis. 2d 183, 192–93, 582 N.W.2d 735 (Ct. App. 1998).

[7] The *Kuhn* case arose before WIS. STAT. § 632.32(5)(i) existed. *See* 1995 Wis. Act 21, § 4.

under one of their policies without considering payments received from other sources. The Hinrichs do not mean that they could never receive $100,000 in benefits when one of them has been involved in an accident with an underinsured motorist, as defined in the policies. In fact, $100,000 is the amount that American Family paid to the Hinrichs here, although American Family did so pursuant to its liability under Mayr's policy.

¶ 21.   In *Dowhower*, 2000 WI 73 at ¶ 33 (emphasis added), the supreme court explained that the key to valid underinsured motorist coverage is that the policy "clearly sets forth that the insured is purchasing a fixed level of UIM recovery *that will be arrived at by combining payments made from all sources*." This language rejects the crux of the Hinrichs' argument that the $100,000 limit of their policies is never obtainable. It is obtainable by combining payments made from all sources.

¶ 22.   We have already concluded that the underinsured motorist provisions in the Hinrichs' policies are unambiguous. Once we have made that determination, no additional analysis is necessary to determine that the provisions "clearly set forth" the method by which a fixed level of recovery will be calculated. Under *Dowhower*, the underinsured motorist coverage in the Hinrichs' policies is not "illusory."

*By the Court.*—Order affirmed.