COURT OF APPEALS
DECISION
DATED AND FILED

April 27, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP2092**

STATE OF WISCONSIN

Cir. Ct. No. 2017CV246

IN COURT OF APPEALS
DISTRICT III

COLE J. KRETMAN AND JOSEPH KRETMAN,

    PLAINTIFFS-APPELLANTS,

UNITED HEALTHCARE COMMUNITY PLAN,

    INVOLUNTARY-PLAINTIFF,

  V.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,

    DEFENDANT-RESPONDENT.

APPEAL from a judgment of the circuit court for Polk County: JEFFERY ANDERSON, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Cole and Joseph Kretman (collectively "Kretman") appeal from a declaratory judgment upholding an insurance policy limitation for injuries caused by a "dangerous dog." Kretman argues American Family Mutual Insurance Company (American Family) failed to provide its insured proper notice of a policy change that reduced coverage for injuries caused by a "dangerous dog." Kretman also argues the circuit court erred by concluding the dog that bit him was a "dangerous dog" within the meaning of the American Family policy. We reject Kretman's arguments and affirm.

## BACKGROUND

¶2 American Family issued a homeowners' insurance policy to Janelle Lundmark effective March 1, 2013 to March 1, 2014. On December 17, 2013, American Family sent Lundmark a notice that it was amending her policy effective with the next policy period and the amendment would reduce or eliminate portions of her coverage. As relevant here, the policy's $300,000 limit for personal liability coverage was changed to $25,000 in coverage if the injuries and damages were caused by a "dangerous dog." The policy defines "dangerous dog" as "any dog … that has a prior history of biting or vicious act that … required any type of professional medical treatment." Lundmark subsequently renewed her policy with American Family.

¶3 Lundmark owned a pit bull that bit an individual in 2015, causing serious injuries. The dog subsequently bit Cole Kretman in 2016, causing him personal injuries and resulting medical expenses. Kretman commenced a

direct-action lawsuit against American Family, alleging double damages under WIS. STAT. § 174.02 (2019-20),[1] because the dog had previously caused injury.

¶4      American Family agreed to pay Kretman its $25,000 policy limit. Kretman claimed the amended policy limit did not apply, and that the applicable limit of liability was $300,000. American Family brought a motion for declaratory judgment, contending the policy limited its liability to $25,000. The circuit court granted the motion, and Kretman now appeals.

**DISCUSSION**

¶5      Kretman argues that American Family failed to properly notify its insured of the change in its coverage as required by WIS. STAT. § 631.36(5)(a). Kretman notes that § 631.36(5)(a) is designed to advise an insured of altered terms within policy renewals, and that insureds must receive a detailed statement of their right to cancel upon any changes to their coverage—including notification of a sixty-day window to cancel their policy upon any change. Kretman argues that while American Family provided information about changes to the policy in the present case, it did not provide any notice of the sixty-day limit to cancel the policy. Citing **Hanson v. Prudential Property & Casualty Insurance Co.**, 224 Wis. 2d 356, 591 N.W.2d 619 (Ct. App. 1999), he contends the reduced policy limits therefore do not apply.

¶6      We conclude Kretman waived this issue by specifically withdrawing it from the circuit court's consideration during the oral arguments on the parties'

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

competing motions for declaratory relief. Kretman's counsel stated the following at oral argument:

> I will concede that the—the *Hanson* case talks about renewal under less favorable terms, and that's a complicated thing; in fact, the *Hanson* case … I will concede that, under the circumstances of this, that that would not apply. So that I will save you some—that will save you some time and effort trying to weed through that thing.

¶7 The circuit court noted in its oral decision that "at the point of the oral arguments, [Kretman] did agree that [*Hanson*] did not apply." We will not blindside the circuit court with a reversal based on a theory that Kretman willingly and deliberately conceded below. *See State v. Rogers*, 196 Wis. 2d 817, 827, 539 N.W.2d 897 (Ct. App. 1995). We also note in this regard that Kretman fails to address the waiver argument whatsoever in his reply brief to this court. Arguments not refuted are deemed admitted. *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979).

¶8 Even if not waived, however, the circuit court properly found that American Family's notice was sufficient under WIS. STAT. § 631.36(5)(a). During the first one-year policy term of American Family's coverage provided to Lundmark, it notified her that it would be adding an amendatory endorsement to her policy at the next renewal term, which was set to begin on March 1, 2014. That notice was provided on December 17, 2013, which was seventy-four days prior to the effective date of the change. The notice also provided: "If this endorsement is not acceptable to you, Wisconsin state law allows you to cancel your policy. You should notify us if you wish to do so." The notice also provided Lundmark with two different options for contacting the company with questions,

stating: "If you have questions about this notice, please contact your agent listed below or call us at 1-800-MY-AMFAM (1-800-692-6326)."

¶9      Kretman argues that "[a]n allowance of time is not the same as a notice of a right." Kretman contends "the fact that change was effective 74 days after notice to [the insured] is irrelevant because [American Family] did not properly inform [the insured] of her rights in the first place."

¶10      Kretman raises a distinction without a difference. As required by law, Lundmark received timely notice of the policy change and the fact that she could cancel her policy if the amendment was not acceptable. Further, even if we assume improper notice, the remedy would be a continuation of the same coverage for the next one-year policy period, with reduced coverage effective during the following policy period. *See* WIS. STAT. § 631.36(5)(a). Kretman's dog bite did not occur until 2016, when the reduced coverage would already have been in effect irrespective of any presumed failure to specifically advise Lundmark of her right to cancel the policy sixty days before renewal.

¶11      Kretman next argues that even if American Family provided sufficient notice, the insurance policy was ambiguous, which rendered the endorsement meaningless. The interpretation of an insurance policy is a question of law that we review de novo. *State Farm Mut. Auto. Ins. Co. v. Langridge*, 2004 WI 113, ¶13, 275 Wis. 2d 35, 683 N.W.2d 75. If the policy language is unambiguous, we give the words of the policy their common and ordinary meaning. *Id.*, ¶14. Language in an insurance policy is ambiguous if susceptible to more than one reasonable interpretation. *Id.*, ¶15. A court may find guidance in construing the common meaning of an insurance policy term by looking to a

definition of the term in a recognized dictionary. *Weimer v. Country Mut. Ins. Co.*, 216 Wis. 2d 705, 722-23, 575 N.W.2d 466 (1998).

¶12 Kretman first contends that the policy's "dangerous dog" provision constitutes an "exclusion" and that "the doctrine of the shifting burden of proof dictates that [American Family] now bears the burden of proving whether the policy's dangerous dog exclusion precludes coverage." However, the "dangerous dog" provision is not an exclusion. It is a limitation on the amount of American Family's liability—the applicability of which is determined under the policy definitions. Kretman seeks coverage under the policy, and thus has the burden of proving the limitation is inapplicable. In other words, he must prove the policy language at issue is ambiguous.

¶13 Kretman next argues that the phrase "required any type of professional medical treatment" in the "dangerous dog" definition is ambiguous. He contends the dog's prior victim did not "require" medical care because the victim sought no treatment for several months after the attack, and even then sought only a diagnosis from an "independent medical examination" upon the advice of his attorney, for which the victim did not follow up. He also claims a tetanus shot the prior victim received after the dog bite was not "required" medical treatment but, rather, was first aid as defined in an OSHA regulation.

¶14 Kretman seeks to create ambiguity where there is none. Indeed, in his reply brief Kretman acknowledges that the dictionary definition that the circuit court applied to the term "required" is correct. The court stated:

> To that end, the Court went to Webster's Collegiate Dictionary, the 11th Edition, from 2003, and looked up the term "required" .... But as part of that definition for require, required or requiring seems to be demand as necessary or essential or have a compelling need for.

….

> But what I find is, when you look at the entire term "require medical treatment" by a common dictionary definition, it is clear from this record that [the prior dog bite victim] required medical treatment. Dr. Wire and the information provided to the Court is clear: require medical treatment in order to prevent further deterioration.
>
> Finding that to be unambiguous, the Court finds that the dog is a dangerous dog and that the reducing clause comes into effect.

¶15 Kretman nevertheless claims the prior dog bite victim did not "require" medical care because he sought none for months after his injury and, when he did, he sought only diagnoses and did not follow up on any of his medical provider's recommendations. There is, however, no temporal requirement for the medical treatment discussed in the policy. The "dangerous dog" provision does not limit the time within which the injured person must seek medical treatment.

¶16 The circuit court also noted that the exhibits submitted by the parties in the present case dispelled Kretman's contention that the prior dog bite victim did not "require" any type of professional medical treatment. The court quoted from a portion of a medical record exhibit titled "Injuries and Medical Treatment," stating that in the prior attack

> the dog took a chunk of tissue from the right side of [the prior victim's] mouth. In addition, the dog bit him in the right arm, near the elbow. As soon as the dog bit him, his arm went numb. Since that time he's had ongoing varying degrees of pain and discomfort on his face and to his right arm. He has experienced weakness and loss of the use of his right hand. He also has pain that radiates up into his shoulder that wakes him up at night.

The court further noted that the doctors were clear that medical treatment was required to avoid future degeneration of nerve tissue, and that it "should be

7

provided as soon as possible so as to prevent his condition from further deterioration."

¶17    In fact, the prior dog bite victim's settlement demand letter to the insurer claimed the victim required medical treatment as a result of the dog bite: "Dr. Wire recommended immediate medical treatment for this injury to prevent his condition from further deterioration.  Dr. Wire states that [the prior victim's] nerve injury from the dog bite will continue to deteriorate if he does not receive prompt medical care."  The demand letter further states that with regard to the scarring from the prior dog bite, "Dr. Wire recommended scar revision, laser resurfacing, and camouflage tattooing."  The bite was so severe that the insurer settled that claim for $85,000.[2]

¶18    The policy does not state that the prior victim had to receive required medical treatment.  Rather, it states that a dog is deemed dangerous if any type of professional medical treatment is required as a result of a prior dog bite.  Put another way, the applicability of the dangerous dog provision is not based upon whether the person first bitten opted not to receive the required medical care.  The amount, severity, or timing of the treatment is irrelevant—the dangerous dog limitation is applicable if any type of professional medical treatment is required as a result of the dog bite.[3]  We therefore affirm the circuit court's conclusion that the

---

[2] Kretman ignores a visit to the emergency room, at which time the tetanus shot was administered.  The circuit court found "it's clear that the tetanus shot was a direct result of the dog bite, or at least that's how it's set forth in the medical records."  The court's finding is not clearly erroneous.  *See* WIS. STAT. § 805.17(2).

[3] Given our conclusion that the policy provision at issue is unambiguous, we need not address case law from other jurisdictions purportedly defining medical treatment.

"dangerous dog" limitation in American Family's policy is unambiguous and that the limitation was applicable under the facts of this case.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.