In the MATTER OF the GUARDIANSHIP OF O. G. M-K,
WENDY M., Petitioner-Appellant,

v.

HELEN E. K., Respondent-Respondent.
In the MATTER OF the GUARDIANSHIP OF S. A. M-K.,
WENDY M., Petitioner-Appellant,

v.

HELEN E. K., Respondent-Respondent.†

Court of Appeals

*Nos. 2009AP720, 2009AP721. Submitted on briefs
September 9, 2009.—Decided June 24, 2010.*

2010 WI App 90

(Also reported in 787 N.W.2d 848.)

† Petition for Review filed.

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Michele Perreault* and *Lori A. Hickman* of *DeWitt Ross & Stevens, S.C.*, Madison.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Carol M. Gapen* and *Emily Dudak Taylor* of *The Law Center for Children & Families*, Madison.

Before Dykman, P.J., Vergeront and Higginbotham, JJ.

¶ 1. HIGGINBOTHAM, J. Wendy M. and Helen (Liz) K. had been in a close, committed relationship for seven years before they decided to adopt two children from Guatemala, Olivia and Sofia.[1] Wendy and Liz could not file a joint petition to adopt the children because they were unmarried, *see* WIS. STAT. § 48.82, and they could not marry because they are a same-sex couple. *See* WIS. STAT. § 765.001(2); *Georgina G. v. Terry M.*, 184 Wis. 2d 492, 504 fn. 1, 516 N.W.2d 678 (1994); *see also* Wis. Const. art. XIII, § 13. It was decided that Liz would be the adoptive parent of both children because she had a good job as an attorney, and the children could be added to her employer's health insurance plan. For the next five years, Liz was the family's breadwinner, and Wendy stayed at home with the children.

¶ 2. Wendy ended her romantic relationship with Liz in 2008. Seeking some form of legal recognition of her rights to the children, Wendy filed petitions for guardianship. At first, Liz consented to the petitions. But, following an incident that occurred while the children were under Wendy's care, Liz withdrew her consent to the guardianships. Nonetheless, it is undisputed that Liz has not sought to restrict Wendy's contact with the children; in fact, an informal "co-

---

[1] The couple adopted Olivia in 2002, and Sofia in 2004.

parenting" arrangement has persisted in which Wendy and Liz share roughly equal placement of the children.

¶ 3. The circuit court dismissed Wendy's guardianship petitions on summary judgment, concluding that Wendy failed to make the showing under *Barstad v. Frazier*, 118 Wis. 2d 549, 348 N.W. 2d 479 (1984), required for a guardianship filed over the objection of a legal parent (Liz) by a third party (Wendy). On appeal, Wendy and the children's guardian ad litem (collectively, "Wendy") raise several issues. First, Wendy contends that the circuit court erred in dismissing her petitions because *Barstad* does not apply because she is a parent within the meaning of the guardianship statute, not a third party to the children. Second, Wendy argues that Liz should be equitably estopped from asserting that she is not a parent to the children. In the alternative, Wendy argues that, if *Barstad* applies, there is a genuine issue of material fact regarding whether compelling reasons as defined by *Barstad* exist that would permit her to overcome Liz's objection to her guardianships. Finally, Wendy argues that the denial of her guardianship petitions violates the children's rights under the Due Process and the Equal Protection Clauses of the Fourteenth Amendment to the U.S. Constitution. U.S. Const. amend. XIV.

¶ 4. We conclude that Wendy is not a parent within the meaning of Wis. Stat. § 54.15(5), and we decline to apply equitable estoppel because to do so would be contrary to Chapters 48 and 54 of the statutes and *Barstad*. Further, we conclude that compelling reasons entitling her to a third-party guardianship under *Barstad* do not exist. Finally, we reject Wendy's constitutional arguments for the reasons explained below. Accordingly, we affirm.

754

## DISCUSSION

■■

¶ 5. Our review of the circuit court's grant of summary judgment is *de novo,* and we employ the same methodology as the circuit court. *See Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 314–16, 401 N.W.2d 816 (1987). A party is entitled to summary judgment when no genuine issue of material fact is in dispute and the party is entitled to judgment as a matter of law. *Id.*

### *Applicable Law*

¶ 6. As noted, Wisconsin law neither provides for adoption by joint petition of a child by an unmarried couple, nor permits same-sex couples to marry. Thus, gay and lesbian couples in close, committed relationships cannot adopt a child by filing a joint petition. Liz is the adoptive parent of both Olivia and Sofia, although Liz acknowledges that Wendy, the "stay-at-home parent" when the family was together, has a "parent-like" relationship with the children. Over Liz's objection, Wendy now seeks to establish her rights to the children by creation of a guardianship under Chapter 54 of the Wisconsin statutes.

¶ 7. The supreme court in *Barstad* established a constitutional standard for determining when a guardianship may be awarded to a third party over the objection of a biological or adoptive parent. *Barstad,* 118 Wis. 2d at 568–69. In *Barstad,* the maternal grandmother of an eight-year-old boy, who had spent nearly all of his life in the grandmother's home, sought custody of the boy over the mother's objection. *Id.* at 551–52. The circuit court granted the grandmother custody, applying a "best interests of the child" test, even while finding that the mother was not an unfit parent. *Id.* at 553–54.

¶ 8.    The supreme court reversed, concluding that the "best interests of the child" standard failed to safeguard the parental rights of the mother under the Due Process Clause of the United States Constitution. *See id.* at 567–68. Instead, the *Barstad* court established the following rule applicable to custody actions brought by a third party and opposed by a biological or adoptive parent:

> [A] parent is entitled to custody of his or her children unless the parent is either unfit or unable to care for the children or there are compelling reasons for awarding custody to a third party. Compelling reasons include abandonment, persistent neglect of parental responsibilities, extended disruption of parental custody, or other similar extraordinary circumstances that would drastically affect the welfare of the child. If the court finds such compelling reasons, it may award custody to a third party if the best interests of the children would be promoted thereby.

*Id.* at 568–69.

¶ 9.    Thus, to obtain custody of a child over a biological or adoptive parent's objection, a third party must prove the parent's unfitness, inability to care for the child or other "compelling reasons" affecting the child's well-being. *Id.* We have regularly applied the *Barstad* standard to guardianship petitions as well as to custody actions. *See e.g., Elgin W. v. DHFS*, 221 Wis. 2d 36, 42, 584 N.W.2d 195 (Ct. App. 1998); *Howard M. v. Jean R.*, 196 Wis. 2d 16, 24, 539 N.W.2d 104 (Ct. App. 1995). We recently affirmed the applicability of the *Barstad* standard to third-party guardianship actions in *Cynthia H. v. Joshua O.*, 2009 WI App 176, ¶ 48, 322 Wis. 2d. 615, 777 N.W.2d 664, following the enactment in 2006 of Chapter 54 of the Wisconsin Statutes, which

made changes to the statutory requirements for legal guardianship of a minor.[2]

*Whether Wendy is a Parent for*
*Purposes of the Guardianship Petitions*

■■

¶ 10. Wendy first argues that the *Barstad* standard does not apply in this case because she is the children's parent, not a third party. The applicable statute, WIS. STAT. § 54.15(5), provides that "[i]f one or both of the parents of a minor . . . are suitable and willing, the court shall appoint one or both as guardian unless the court finds that the appointment is not in the proposed ward's best interest." "Parent" is not defined within WIS. STAT. ch. 54. Wendy argues that, as a result, we should apply the common, ordinary meaning of the

---

[2] The new guardianship statute no longer includes the requirement in WIS. STAT. § 880.03 (2005–06) that "extraordinary circumstances requiring medical aid or the prevention of harm" exist before a guardianship may be granted over the parent's objection. See 2005 WISCONSIN ACT 387, sec. 100 creating WIS. STAT. ch. 54. We concluded in *Cynthia H. v. Joshua O.*, 2009 WI App 176, ¶ 48, 322 Wis. 2d 615, 777 N.W.2d 664, that the removal of this language did not replace the standard for contested third-party guardianships set forth in *Barstad v. Frazier*, 118 Wis. 2d 549, 348 N.W. 2d 479 (1984), with a "best interests of the child" standard. We so concluded because the *Barstad* standard was a constitutional test adopted to protect the fundamental rights of parents to their children, and could not be abrogated by statute. *Cynthia H.*, 322 Wis. 2d 615, ¶ 43.

*Cynthia H.* was ordered published after briefs were filed in the present case. In her briefs, Wendy made the same argument advanced by the losing party in *Cynthia H.* regarding the impact of the adoption of Chapter 54 on the continued applicability of *Barstad*. However, Wendy has abandoned this argument, as she explained to us in a January 2010 letter addressing our decision in *Cynthia H.*

word as defined by a standard dictionary, and contends that she is a parent under such a definition. *See* THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1277 (4th ed. 2006) ("n. One who begets, gives birth to, or nurtures and raises a child; a father or mother.").

¶ 11. However, application of a dictionary definition of parent is inappropriate because parent is defined within Chapter 48, which is a part of the applicable statutory scheme. *See DOR v. River City Refuse Removal, Inc.*, 2007 WI 27, ¶ 46, 299 Wis. 2d 561, 729 N.W.2d 396 (resort to dictionary definition appropriate only when a term is not defined in the applicable statutes). The term "parent" is defined, in pertinent part, by WIS. STAT. § 48.02(13)[3] as "either a biological parent . . . or a parent by adoption," a definition that plainly excludes Wendy. This definition applies because an action for guardianship of a minor is a proceeding under WIS. STAT. ch. 48; as pertinent, WIS. STAT. § 48.14 provides that "the [juvenile] court has exclusive jurisdiction over . . . [t]he appointment and removal of a guardian of the person for a child under . . . ch. 54."

██

¶ 12. Moreover, application of a definition of "parent" that might include persons who are not biological or adoptive parents would run afoul of *Barstad*. *Barstad* defines parent by implication as one who is a

---

[3] Wisconsin Stat. § 48.02(13) defines parent as

either a *biological parent,* a husband who has consented to the artificial insemination of his wife under s. 891.40, or a *parent by adoption.* If the child is a nonmarital child who is not adopted or whose parents do not subsequently intermarry under s. 767.803, "parent" includes a person acknowledged under s. 767.805 or a substantially similar law of another state or adjudicated to be the biological father. "Parent" does not include any person whose parental rights have been terminated.

biological or adoptive parent. *See generally Barstad*, 118 Wis. 2d at 567–69. Under *Barstad*, a person who is not a biological or adoptive parent of a child is a third party who cannot become the child's guardian over the biological or adoptive parent's objection absent compelling reasons, such as the unfitness of the biological or adoptive parent. *Barstad*, 118 Wis. 2d at 568–69. Adoption of a definition of "parent" for guardianship actions that included a class of persons other than biological or adoptive parents would require modification of *Barstad*, which we cannot do. *See Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997).

*Whether Liz is Equitably Estopped from Asserting that Wendy is Not a Parent*

¶ 13.　Wendy contends that, regardless of whether Wendy is a parent within the meaning of the statutes, Liz is equitably estopped from asserting that Wendy is not a parent, and that the issue of whether equitable estoppel applies should not have been decided on summary judgment. Equitable estoppel requires proof of three elements: "(1) an action or an inaction that induces; (2) reliance by another; and (3) to his or her detriment." *Randy A.J. v. Norma I.J.*, 2004 WI 41, ¶ 26, 270 Wis. 2d 384, 677 N.W. 2d 630.

¶ 14.　In essence, Wendy argues that Liz promised her that she would always be an "equal parent," and that she relied on this promise to her detriment by not insisting on becoming the adoptive parent of one or both of the children. In support, Wendy cites *Randy A.J.*, 270 Wis. 2d 384, ¶¶ 26–31, where the supreme court used equitable estoppel to prevent the child's mother and biological father from asserting the pater-

759

nity of the biological father. For the reasons that follow, we decline to apply equitable estoppel here.

¶ 15. First, we note that the parties have adopted a "co-parenting" arrangement approximating equal placement of the children, and Wendy does not allege that Liz has interfered with this arrangement. Rather, Wendy asks us to hold Liz to an alleged promise not to exercise her (Liz's) rights under the law as the sole, legal adoptive parent of the children to preclude any other person (such as Wendy) from infringing upon her parental rights. To apply equitable estoppel on these facts would confer parental rights to not only Wendy, but likely to an entire class of persons as well, without regard to the clear statements of Chapters 48 and 54 of the statutes limiting the scope of the definition of parent and *Barstad*.[4]

¶ 16. Second, *Randy A.J.* provides little support for Wendy's position. In *Randy A.J.*, the child's mother led her husband to believe that the child was his when she had reason to believe that another man was the child's biological father. *See Randy A.J.*, 270 Wis. 2d 384, ¶¶ 3–4. After the husband filed for divorce and sought sole custody of the child, the mother then joined with the biological father in asserting the biological father's rights to the child. *Id.*, ¶¶ 6–8. The supreme court applied equitable estoppel to prevent the biological father and the mother from using a genetic test to rebut the statutory presumption in favor of the husband's paternity. *Id.*, ¶¶ 30–31. The *Randy A.J.* court explained that its application of estoppel was

---

[4] Moreover, to the extent that Liz has not sought to limit Wendy's access to the children under the agreed upon placement arrangement, she has kept any promise she may have made that Wendy would be an "equal parent" to the children.

based on the deep unfairness of the mother's conduct, and the policy favored in Wisconsin law of "preserving the status of marital children, even when it can be positively shown that the husband of the mother could not have been the father of the child." *Id.*, ¶¶ 30–31.

¶ 17. In *Randy A.J.*, the court applied equitable estoppel defensively under the unique facts of the case to prevent the rebutting of the statutory presumption in favor of a husband being the father of a child born during the marriage. Here, Wendy asks us to apply the doctrine offensively to establish her parental rights to the children where Liz has not sought to interfere with Wendy's on-going relationship with the children, and to provide her with rights that do not exist under the relevant statutes and *Barstad*.

*Whether Compelling Reasons Support a Third-Party Guardianship under Barstad*

■■

¶ 18. Alternatively, Wendy asserts that there is a genuine issue of material fact regarding whether there are compelling reasons entitling her to guardianship of the children under *Barstad*. As noted, *Barstad* states that "compelling reasons for awarding custody to a third party . . . include abandonment, persistent neglect of parental responsibilities, extended disruption of parental custody, or other similar extraordinary circumstances that would drastically affect the welfare of the child." *Barstad*, 118 Wis. 2d at 568. Specifically, Wendy argues that Liz's failure to consent to the guardianship is an "extraordinary circumstance that would drastically affect the welfare of the children" by depriving them of one of the two persons who has raised

them from infancy.[5] She contends that the granting of summary judgment denied her the opportunity to present evidence regarding her role in the children's lives, and how Liz's prevention of Wendy's participation has and will affect the children. For the reasons that follow, we conclude that Wendy has failed to meet *Barstad*'s compelling reasons standard.

¶ 19.   Wendy's argument that compelling reasons exist is based on an out-of-context interpretation of the phrase "other similar extraordinary circumstances that would drastically affect the welfare of the child." The *Barstad* standard is not concerned with detrimental effects to the child caused by the end of the relationship with a person, like Wendy, who is a third party to the child under *Barstad*. The *Barstad* standard applies only to circumstances *caused by the biological or adoptive parent* drastically affecting the child's welfare that might justify the award of custody (or guardianship) to a third party. *Barstad* sets forth the circumstances that must exist before the state may infringe upon the rights of a biological or adoptive parent's rights to make decisions regarding the care, custody and control of the parent's children. These circumstances, under *Barstad*, include abandonment, neglect, disruption of parental custody or other extraordinary circumstances caused by the biological or adoptive parent. Wendy makes no allegation that Liz meets any of these criteria. Thus, there are no triable factual issues concerning whether compelling reasons exist under *Barstad* to justify granting Wendy's guardianship petitions over Liz's objection.

---

[5] However, Wendy acknowledges that Liz has not, in fact, denied her access to the children.

■■

¶ 20.   Finally, Wendy raises two constitutional arguments on the children's behalf arising from the children's fundamental right to the establishment and continuance of the parent-child relationship described in *In re Guardianship of D.J.*, 682 N.W.2d 238, 244–45 (Neb. 2004), *Johnson v. Hunter*, 447 N.W.2d 871, 876 (Minn. 1989), and *Ruddock v. Ohls*, 154 Cal. Rptr. 87, 91 (Cal. App. 1979).[6] First, Wendy contends that failure to grant Wendy guardianship violates the children's property and liberty interests protected by the Due Process Clause of the Fourteenth Amendment. Second, Wendy contends that the failure of the law to recognize her as the children's parent for purposes of guardianship violates the children's right to equal protection. Wendy devotes a total of three pages to these arguments in her brief-in-chief, much of which does not focus on the arguments themselves. We conclude that her arguments are inadequately developed, and we therefore decline to address them. *See Roehl v. American Family Mut. Ins. Co.*, 222 Wis. 2d 136, 149, 585 N.W.2d 893 (Ct. App. 1998). Moreover, to the extent that these arguments challenge the constitutionality of the guardianship statute if it is construed to exclude her as a parent, Wendy has failed to notify the attorney general of her constitutional challenge, as required by WIS. STAT.

---

[6] As noted in ¶ 3 of this opinion, Wendy's brief is joined in all respects by the children's guardian ad litem. Thus, while Wendy would lack standing to raise constitutional issues on the children's behalf, *see Mast v. Olsen*, 89 Wis. 2d 12, 16, 278 N.W.2d 205 (1979) (a party has standing to raise constitutional issues only when his or her own rights are affected), there is no standing problem here because the guardian ad litem joins Wendy in raising these issues.

§ 806.04(11) ("If a statute . . . is alleged to be unconstitutional, the attorney general shall also be served with a copy of the proceeding and be entitled to be heard.").

## CONCLUSION

¶ 21. For the foregoing reasons, we conclude that the circuit court properly dismissed Wendy's guardianship petitions on summary judgment. We therefore affirm.

*By the Court.*—Judgments affirmed.