# Rhiannon B. WOLF,
## Plaintiff-Appellant,††

v.

## AMERICAN FAMILY MUTUAL INSURANCE COMPANY,
## Defendant-Respondent,

## BLUE CROSS BLUE SHIELD OF WISCONSIN
## and ABC Insurance Co.,
## Defendants.

Court of Appeals

*No. 2014AP1522–FT. Submitted on briefs October 28, 2014.
—Decided March 4, 2015.*

## 2015 WI App 36

(Also reported in 865 N.W.2d 186.)

†† Petition for Review Dismissed.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Ryan Hetzel* of *Hetzel & Nelson, LLC* of West Bend.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Michael J. Wirth* of *Peterson, Johnson & Murray, S.C.* of Milwaukee.

Before Brown, C.J., Neubauer, P.J., and Reilly, J.

¶ 1. BROWN, C.J.   For what proved to be a limited time, the legislature put the "Truth in Auto Law" into effect. It was the law from November 1, 2009, until the legislature replaced it, effective November 1, 2011. During its brief lifespan, the law prohibited reducing clauses and created broader protections for underinsured motorist coverage. The law explicitly stated that it applied prospectively—only affecting insurance policies issued or renewed on or after the November 1, 2009 effective date. Many policies, like the one held by Rhiannon Wolf, contain "elasticity clauses," which mandate that the insurance policy must conform to the law of the state where it is issued. Wolf renewed her insurance policy before the Act's effective date, but she

758

suffered injuries in a car accident after the law took effect. She argues on appeal that, because her insurance policy contains an elasticity clause, the changes instituted by the Truth in Auto Law should apply to her coverage. We reject Wolf's position. In accordance with the legislature's explicitly mandated effective date, the changes in the law simply did not exist for policies that were renewed or issued before November 1, 2009. Wolf's policy could not "conflict" with a law that only applied to renewed or issued policies after November 1, 2009, which hers was not.

*Background*

¶ 2.   On December 8, 2009, Wolf sustained injuries in a car accident while she rode as a passenger in an automobile driven by Maria Jaquet. American Family Mutual Insurance Company provided both the automobile liability coverage for Jaquet's vehicle and separate underinsured motorist coverage for Wolf. Both policies had coverage amounts of $250,000. Pursuant to Jaquet's insurance policy, American Family paid Wolf $250,000 of automobile liability coverage.

¶ 3.   On November 20, 2012, Wolf filed a lawsuit against American Family and Jaquet seeking additional damages for the injuries she sustained. On January 8, 2014, Wolf amended her complaint to assert a claim against American Family for additional money under her own underinsured motorist coverage. On February 7, 2014, the court dismissed all claims against Jaquet and American Family for the liability policy it provided after the limits were paid to Wolf. American Family then filed a motion for declaratory and summary judgment claiming it did not owe Wolf anything under her underinsured motorist coverage.

¶ 4. As we have already stated, the dispute involved the Truth in Auto Law as it applied to Wolf's insurance policy. *See* 2009 Wis. Act 28, §§ 3153, 3171. Wolf's underinsured motorist coverage was part of a six-month automobile policy that had renewed on June 19, 2009, and continued through December 19, 2009. The policy had a reducing clause, which curtailed the coverage owed to Wolf by the amount she received from other sources (e.g., another driver's liability coverage). The policy defined an "underinsured motor vehicle" as a vehicle insured with "bodily injury liability limits less than the limits of liability of this Underinsured Motorist coverage." The policy also contained an elasticity clause, which stated, "Terms of this policy which are in conflict with the statutes of the state in which this policy is issued are changed to conform to those statutes."

¶ 5. Wolf does not dispute that under the terms of her policy she would not qualify to receive underinsured motorist coverage for two reasons. First, Jaquet does not qualify as an underinsured motorist as defined by the policy because her liability coverage was for the same dollar amount as Wolf's underinsured motorist coverage. Second, the reducing clause would draw Wolf's coverage down to $0, as she already received $250,000 from Jaquet.

¶ 6. But, the Truth in Auto Law amended Wis. Stat. § 632.32 (2009–10)[1] in several ways that are relevant to this case. First, it created a broader definition of underinsured motor vehicles, describing them as vehicles that do not carry enough coverage to fully compensate a party for his or her injuries. 2009 Wis.

---

[1] All references to Wis. Stat. § 632.32 are to the 2009–10 version of the Wisconsin Statutes. All other references to the Wisconsin Statutes are to the 2013–14 version.

Act 28, § 3153. Second, the Act prohibited reducing clauses like the one in Wolf's policy. *Id.*, § 3171. On the other hand, the amended Wisconsin statutes had an effective date of November 1, 2009. *See id.*, § 9426(2). And, the legislature explicitly said the statutory changes that took effect on November 1, 2009, only applied to policies issued or renewed after the effective date. *Id.*, § 9326(6).

¶ 7.  During summary judgment, American Family argued that the Truth in Auto Law had no effect on Wolf's underinsured motorist coverage. Therefore, the company argued, the terms of the policy as written prohibited Wolf from collecting any additional damages. Wolf argued that the elasticity clause caused her insurance policy to automatically conform to the changes the Truth in Auto Law instituted on November 1, 2009, meaning the reducing clause and the definition of an "underinsured motorist" in her policy were no longer valid. The circuit court sided with American Family, finding the Truth in Auto Law only applied to policies issued or renewed after November 1, 2009, not Wolf's existing policy. Wolf then appealed.

*Analysis*

¶ 8.  This court reviews a grant of summary judgment independently, using the same standard the circuit court used. *Olson v. Farrar*, 2012 WI 3, ¶ 23, 338 Wis. 2d 215, 809 N.W.2d 1. The circuit court addresses a declaratory judgment using its sound discretion. *Id.*, ¶ 24. Because this case hinges on the interpretation of an insurance policy it presents a question of law, meaning we review the circuit court's grant of declaratory judgment independently. *Id.*

¶ 9.   We interpret insurance policies using the same rules that apply to contracts in general. *Wisconsin Label Corp. v. Northbrook Prop. & Cas. Ins. Co.*, 2000 WI 26, ¶ 23, 233 Wis. 2d 314, 607 N.W.2d 276. Therefore, we must determine and give effect to the intent of the insurer and the insured. *Id.* In doing so, we construe the policy as a reasonable person in the position of the insured would understand the agreement. *Id.*, ¶ 25. When we cannot find any ambiguity in a policy, we interpret the terms of the contract as they are written. *Kremers-Urban Co. v. Am. Emp'rs Ins. Co.*, 119 Wis. 2d 722, 736, 351 N.W.2d 156 (1984).

¶ 10.   The circuit court relied on an unpublished opinion of this court, *Myers v. American Family Mutual Insurance Co.*, No. 2013AP2045, unpublished slip op. (WI App Feb. 25, 2014).[2] *Myers* dealt with an almost identical fact situation to the one we now address. Like here, Myers had an insurance policy that American Family issued before the Truth in Auto Law's effective date, but he sustained injuries in an accident after the Act took effect. *Id.*, ¶¶ 4–5. The policy provided Myers with underinsured motorist coverage, but it also used a reducing clause. *Id.*, ¶ 5. The terms of the underinsured motorist coverage and the reducing clause were nearly identical to the ones Wolf's policy contained. *See id.* Also, as in this case, Myers claimed his policy's elasticity clause implemented the changes the Truth in Auto Law made, erasing the reducing clause that otherwise governed his policy and redefining "underinsured motorist." *Id.*, ¶ 7. Finally, American Family used the same argu-

---

[2] Authored, unpublished court of appeals decisions issued on or after July 1, 2009, may be cited for their persuasive authority. *See* WIS. STAT. RULE 809.23(3)(b).

ment it uses in this case: the elasticity clause did not apply because the Truth in Auto Law only affected insurance policies issued on or after the November 1, 2009 effective date. *Id.*, ¶ 8.

¶ 11. This court decided an insurance policy cannot be in conflict with a statute that does not apply to the policy. *Id.*, ¶ 13. The elasticity clause in Myers' policy "clearly and unambiguously state[d]" that only terms "in conflict with" statutes of the state would change and conform to those laws. *Id.* Because the Truth in Auto Law specifically said it only applied to insurance policies issued after November 1, 2009, the statutory changes the law made did not apply to Myers' policy. *Id.* Therefore, Myers' policy did not conflict with the Truth in Auto Law. *Id.*

¶ 12. Like the circuit court, we find the rationale in the unpublished *Myers* opinion to be persuasive. The elasticity clause was designed to automatically change a policy term in place on the policy's effective date that conflicts with a law promulgated and made effective during the policy period. But we do not have that situation here. The changes in the law only applied to insurance policies entered into after November 1, 2009. This means that, prior to November 1, 2009, those changes did not yet exist. Plainly, policy terms could not be in conflict with a law whose very existence was dependent upon the date that the law became effective. So, prior to November 1, 2009, there was no law called the Truth in Auto Law. It did not exist as far as Wolf's policy was concerned.

¶ 13. The fact of the matter is that the legislature chose not to make policies such as Wolf's conflict with Wisconsin law. As to policies entered into before November 1, 2009, the law that was in effect prior to that date remained in effect. The legislature could

have written the Act in a way that would have made Wolf's policy conflict with Wisconsin law, thereby using the elasticity clause to incorporate the changes into the policy. But it did not do so. A case in point is *Hanson v. Prudential Property & Casualty Insurance Co.*, 224 Wis. 2d 356, 591 N.W.2d 619 (Ct. App. 1999). There, this court confronted a similar argument arising out of a legislative change in statute that resuscitated anti-stacking provisions in car insurance policies. *Id.* at 369. The statutory amendment at issue in *Hanson* explicitly stated that for motor vehicle insurance policies issued before the act's effective date, the antistacking provision is "first enforceable with respect to *claims* arising out of motor vehicle accidents occurring on the effective date of this subsection." 1995 Wis. Act 21, § 5(2) (emphasis added). Therefore, in *Hanson*, the emergence of a claim drove the Act's effective date, while in this case, the issuance or renewal of a policy determines the effective date. Wolf tries to use *Hanson* to support her argument, but clearly, the words of the legislature show the difference between her case and *Hanson*.

¶ 14.    Wolf also cites *Roehl v. American Family Mutual Insurance Co.*, 222 Wis. 2d 136, 585 N.W.2d 893 (Ct. App. 1998), as support. In that case, American Family placed a "drive-other-car" exclusion in Roehl's insurance policy even though such a term was unlawful at the time. *Id.* at 142–43. During the policy period, the legislature changed the law to make drive-other-car exclusions enforceable, and this change became effective for the policy at issue. *Id.* Roehl suffered injuries in a car accident and tried to assert a claim for underinsured motorist coverage. *Id.* at 139–40. American Family denied this claim, stating that the drive-other-car exclusion applied. *Id.* at 140. Roehl sued,

764

claiming that American Family effectively changed the insurance policy without providing notice. *Id.* at 140–41. We found that the policy's elasticity clause showed the parties anticipated changes to the contract arising out of legislative agreements and made the drive-other-car exclusion effective. *Id.* at 149. The elasticity clause in *Roehl* actually helped American Family because the change in the law favored the company and became effective *during* the policy period.

¶ 15.   Wolf ostensibly cites *Roehl* for the proposition that elasticity clauses are enforceable. Of course they are. However, her contention attacks a straw man. American Family does not contend the elasticity clause is unenforceable—rather, it argues that the elasticity clause does not implement changes which are not "in conflict with" the terms of the policy because these legislative changes have not become effective until a policy is renewed or issued. We affirm.

*By the Court.*—Order affirmed.